**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:05cr378

MELVIN L. GARY, JR.


**MEMORANDUM OPINION**


This matter is before the Court on the Defendant's MOTION TO SUPPRESS (Docket No. 10) items seized and statements made following a search of the defendant's home that was conducted pursuant to a search warrant. The Defendant, Melvin L. Gary, Jr., argues that the affidavit supporting the search warrant application did not establish probable cause for issuance of a warrant and that, therefore, the search violates the Fourth Amendment. The United States argues that the affidavit established probable cause and that, even if it did not, the search was valid under the so called "good-faith" exception to the exclusionary rule that the Supreme Court formulated in United States v. Leon, 468 U.S. 897 (1984). For the reasons set forth below, the motion to suppress will be denied, notwithstanding that the affidavit did not establish probable cause for issuance of the warrant, and that, therefore, the warrant was invalid.

## STATEMENT OF FACTS

On March 26, 2005, Officer Wayne B. Graves of the Richmond Police Department, presented to a state magistrate an affidavit for a search warrant to search the dwelling and curtilage of 601 Northside Avenue, Richmond, Virginia, which, at the time, was Gary's residence.   The affidavit specified in constitutionally sufficient detail the place to be searched and the items to be searched for and seized.   In the space provided in the affidavit for "Material Facts Constituting Probable Cause That the Search Should Be Made," Graves wrote "SEE ATTACHED," a reference to an attached single page that set forth the facts offered by Graves as probable cause for the requested search warrant.

That affidavit read in pertinent part:

> Your affiant received information regarding possible illegal narcotics activity occurring at 601 Northside Avenue.  Information was also provided to your affiant that a suspect known as "Melvin", described as a short black male, approximately in his 30s, 5'9" approx. 180 lbs. was selling large amounts of heroin from 601 Northside Avenue.  On March 25, 2004, at approx 2300 hours this affiant responded to 600 block of Northside Avenue where a green trashcan with the number 601 was marked on the side was located in the alleyway directly behind 601 Northside Ave.   The trashcan located by your affiant was searched and found that it contained a document bearing the address of 601 Northside Avenue. Richmond Virginia 23222.  Also located and recovered in the trash can were items apparently used in the packaging of illegal narcotics such as plastic bags, one plastic bag with white powder substance coated inside and another plastic bag with a green plant material inside the plastic bag and foil cut into square

> pieces.  These  items  were  located  in  black
> plastic  bags  that  cinched  up  inside  the
> trashcan.

Def.'s Ex. 9.  (emphasis added).

The affidavit also stated that, based on a decade of training and experience in narcotics investigation, Graves knew that people who are traffic illegal narcotics, often package the narcotics in clear plastic sandwich bag corners and in square pieces of metallic foil, and that drug dealers discard the remnants of this packaging--including bags with the residue of cocaine and marijuana--in the trash.  Also, based on Graves' ten years of experience in narcotics police work, Graves averred that he "believe[d] that the trashcan [sic] searched is the trashcan utilized by residents at 601 Northside Avenue, . . .[and] that illegal drug activity is occurring inside 601 Northside Avenue."[1]  Graves delivered the affidavit (which in Virginia is also the application for a search warrant) and the attachment to the magistrate on March 26, 2005.

After reviewing these submissions, the magistrate prepared and issued the warrant at 6:05 PM that day.  After searching 601 Northside Avenue shortly thereafter, the police seized a large

---

[1] The affidavit contains a boilerplate, conclusory assertion that Graves' "investigation tends to confirm rather than dispel the information regarding the illegal drug activity occurring inside 601 Northside Avenue."  Def.'s Ex. 9.  The affidavit contains no factual support for this conclusion; and, consistent with the Court of Appeals in United States v. Bynum, 293 F.3d 192, 197 (4th Cir. 2002), the Court here does not give credence to summary statements of this sort in assessing the validity of the warrant.  In fact, they are to be viewed with great skepticism.  Id.

amount of heroin, two firearms, scales, packaging materials, and $5,261.00 in United States currency. During the search, the police arrested Gary and advised him of the rights specified by <u>Miranda v. Arizona</u>, 396 U.S. 868 (1969). Gary subsequently admitted that the seized property was his and that he was a drug dealer.

Gary was indicted for possession with intent to distribute heroin, possession of a firearm in furtherance of a drug trafficking crime, and possession of firearm by a convicted felon. After entering a plea of not guilty, Gary filed this motion to suppress the seized evidence contending that: (1) several crucial facts were omitted from the affidavit which, if they had been included, would have shown that probable cause was lacking; and (2) in any event, the affidavit did not establish probable cause. Gary also seeks suppression of the post-arrest statements, presumably on the theory that they are the fruits of the unlawful search. After a proffer by the Defendant and argument by both parties, a hearing was held pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

During the hearing, it was established that the time reference in the affidavit was in error and that, in fact, the search of the trash can took place at 11:00 PM, March 25, 200<u>5</u>, not on March 25, 200<u>4</u>, as set forth in the affidavit. Defense counsel agreed that the date was a typographical error, but argued that there was no evidence that the magistrate had read the date in the affidavit in

any way other than literally; that is, as March 25, 2004.[2] However, at a hearing on this motion, the issuing magistrate testified that he read the date to be March 25, 2005 and that he would not have issued the warrant if he had thought that the date was March 25, 2004.  The United States has stipulated that no information other than the supporting affidavit was provided to the magistrate to support probable cause.

Testimony also revealed the following facts, which were neither made known to the magistrate by Graves nor included in the affidavit:

(1)   Graves had searched two trash cans, not one, both of which were located directly behind 601 Northside Avenue (one of which was marked "601" and one which was unmarked);

(2)   The plastic bag containing white powder residue and green plant residue came from trash bags located in the trash can marked "601;"

(3)   The pieces of foil and plastic bags with their corners torn off came from bags located in the unmarked can;

(4)   The document bearing the address "601 Northside Avenue" bore the name "Tammy Sauls," and not "Melvin" or "Melvin Gary" and that document was found in a trash bag in the trash can marked "601;"

---

[2] Neither Gary nor the United States mentioned the date of the trash can search or the issue of staleness in their original briefs.  The matter was raised by the Court at the first phase of the hearing, and was the subject of subsequent briefing and argument.

> (5)  There were at least four trash cans marked "601" in the alley behind the 600 block of Northside Avenue (only one of which was directly behind 601 Northside Avenue);[3] and
>
> (6)  Graves put the trash bags in the squad car in two trips, did not label which can they had come from, and took them to another location to be searched.

Gary argues that these omissions were made, at a minimum, with reckless disregard for the truth, and that the omitted information, if included in the affidavit, would defeat the magistrate's finding of probable cause.

Gary also asserts that: because the only date in the affidavit states that the trash can search occurred a year and a day before the application for the warrant, the evidence obtained from the trash can search was stale; the stale evidence has no probative force of its own; and the stale evidence does not corroborate the anonymous tips described in the affidavit.  Consequently, says Gary, the affidavit is simply a "bare bones" affidavit that does not establish probable cause and that cannot be saved under the good-faith rule of Leon.  See United States v. Laury, 985 F.2d 1293, 1311 n. 23 (5th Cir.1993) cited in United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996) (defining "bare bones" affidavit as "one that contains wholly conclusory statements, which lack the

---

[3] The City of Richmond supplies trash cans to city residents and the City paints the number on the cans.  The record does not explain why there were four cans bearing the number 601 in the alley.

6

facts and circumstances from which a magistrate can independently determine probable cause" (internal quotations omitted) and holding that Leon's good-faith rule does not save warrants supported by bare bones affidavits).

The United States contends that the erroneous date is merely a typographical error that should not be considered for what it actually recites: a search of the trash can a year and a day before the warrant was issued.  The United States makes the corollary argument that the affidavit establishes probable cause if the actual date of the search is used to analyze that issue.  The United States contends that, even with the date error in the affidavit, the evidence should not be suppressed.

## DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their. . . houses. . . against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause. . . ."  U.S. CONST. amend. IV.  Except in limited circumstances not at issue here, a search of a house may be made only if authorized by a search warrant issued on a showing of probable cause.  United States v. Dequasie, 373 F.3d 509, 518 (4th Cir. 2004) (citing Camara v. Municipal Court of San Francisco, 387 U.S. 523, 528-29 (1967)).  Probable cause exists where, looking at the totality of the circumstances, "a man of reasonable prudence," Ornelas v. United States, 517 U.S. 690, 696 (1996), would believe

that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

A court reviewing a magistrate's determination of probable cause does not assess the existence of probable cause de novo. Instead, the court's task is to ascertain whether the magistrate had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 238-39; United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir.  1993).  In doing so, courts are to accord the magistrate's determination "great deference."  In addition, "courts should not invalidate [] warrant[s] by interpreting [] affidavit[s] in a hypertechnical, rather than commonsensical, manner."  Gates, 462 U.S. at 236.

To assess a magistrate's finding of probable cause, a reviewing court may look only at the evidence actually provided to the magistrate.  Also, the reviewing court must credit any reasonable inferences that may be drawn therefrom.  Gates, 462 U.S. at 235 (magistrate has the "authority . . . to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant."); Wilhelm, 80 F.3d at 118.  As the Supreme Court has made clear,"[u]nder the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. A

contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless." Whitley v. Warden, 401 U.S. 560, 565 n.8 (1971) (internal citations omitted).

These general principles provide the essential framework for resolving the motion to suppress.

## I.   The Affidavit, As Written, Fails To Establish A Substantial Basis For Probable Cause

Gary argues that, if the affidavit is read literally to mean that the date of the trash can search was March 25, 2004, the physical evidence seized by Graves was stale when Graves applied for the warrant a year and a day later. That argument is well-taken.[4]

Staleness is determined by examining all the relevant facts and circumstances, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized. United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984) (cited in United States v. Washington, 139 Fed. Appx. 479, 482 (4th Cir. 2005) (unpublished case)). On the face of the affidavit, the evidence of drug trafficking taken from the search of the trash can behind the residence was a year and a day old when the warrant was issued. While drug trafficking is an activity that certainly may be engaged in for more than a year, there is no

---

[4] The issuing magistrate testified that he would not have issued the warrant if he had noticed that the information about the trash can search had been more than a year old.

assertion in the affidavit that the same occupants of 601 Northside Avenue lived there in both March 2004 and March 2005.  Nor can the affidavit otherwise be read to assert ongoing drug trafficking activity for more than a year.  Cf. United States v. Bascaro, 742 F.2d 1335, 1345-46 (11th Cir. 1984) (affidavit recited an ongoing seven month drug conspiracy; evidence was not stale).  If the affidavit is read literally, the physical evidence seized from the trash can is stale.[5]

Because that evidence is stale, it could have no corroborative effect on the otherwise unverified anonymous tips recited in the opening sentences in the affidavit.  See Bascaro, 742 F.2d at 1345-46 ("where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time."); cf. United States v. Spikes, 158 F.3d 913, 924 (6th Cir. 1998) (even if evidence was stale, it had been updated by more recent, reliable, and corroborated information).[6]

---

[5] Compare United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988) (report in June of marijuana cultivation was not stale when warrant obtained in November); and (United States v. Minis, 666 F.2d 134, 140 (5th Cir. 1984) (report in June that defendant was growing marijuana was not stale when search was executed in October because plants likely were still there) with United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981) (six month interval between report of drugs and application for warrant made evidence of PCP distribution stale).

[6] Of course, evidence of continuous drug activity that is temporally connected also could provide corroboration, but that linkage is not present in the affidavit.

In sum, considered on its face, and given a literal construction, the affidavit does not provide a substantial basis for a finding of probable cause to search 601 Northside Avenue in March 2005.

## II.   The Affidavit Establishes A Substantial Basis For A Finding Of Probable Cause If The Actual Date Of The Trash Can Search Is Considered

Gary makes two related arguments to assail the adequacy of the warrant.  Each will be considered in turn.

### A.   The Substance Of The Warrant Considering The Actual Date Of The Trash Can Search

It is beyond dispute that Graves actually searched the trash can on March 25, 2005, the evening before the he submitted the affidavit for the search warrant.  It is appropriate, therefore, to assess whether, if the correct date of the trash can search is considered, there was a substantial basis for a finding of probable cause by the magistrate.

Gary's first argument on that issue is that there is no factual nexus between the evidence taken from the trash cans behind 601 Northside Avenue and the residence.  For that reason, says Gary, there is no probable cause for a warrant even if the actual date of the trash can search is considered in evaluating the existence of probable cause.

The Fourth Circuit has held that "the nexus between the place to be searched and the items to be seized may be established by the

nature of the item and normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (citing cases in accord from the Fifth, Sixth, Eighth, and Ninth Circuits).  Thus, the affidavit must describe circumstances that indicate the evidence to be seized is likely to be stored at the place to be searched or that there is "a geographic relationship between the area where" the already obtained  evidence was found and the place to be searched.  Lalor, 996 F.2d at 1582.

The trash can search yielded two plastic bags with a white powder substance inside, which Graves believed was heroin, a bag with green plant material residue in it, six plastic bags with the corners removed, and seven square pieces of foil.  Graves reported that, based on a decade of training and experience in narcotics investigation, those items appeared to him to have been "used in the packaging of illegal narcotics." Def.'s Ex. 9.  Additionally, Graves found in a trash bag an envelope addressed to a "Tammy Sauls" at "601 Northside Avenue."

Graves asserted in his affidavit that the trash can from which he secured these items was located directly behind 601 Northside Avenue.  That is the usual place to situate a trash can, particularly where, as here, that residence backs onto an alley, a passageway used by trash collection vehicles.  While the trash can was not within the curtilage of 601 Northside (it is a fenced

12

property with guard dogs protecting it), the magistrate reasonably could infer that the trash can marked "601" and located directly behind 601 Northside Avenue was used by the occupants of 601 Northside Avenue.   The fact that a document addressed to 601 Northside Avenue was found in the trash can strengthens that inference.

Under these circumstances, there was a sufficient factual nexus between the evidence of drug trafficking found in the trash and the residence at 601 Northside Avenue to permit the inference that contraband or evidence of drug trafficking probably would be found in the residence.   Cf. United States v. Colonna, 360 F.3d 1169, 1175 (10th Cir. 2004) (evidence obtained from defendant's trash cans supported probable cause to search the residence); United States v. Woods, 149 F.3d 1172, 1998 WL 276549 (4th Cir. 1998) at **2 (same) (unpublished case); United States v. Payne, 995 F.2d 1064, 1993 WL 218770 (4th Cir. 1993) at **1 (same) (unpublished case).

Gary also argues that the information in the affidavit relating to the anonymous tips lacks reliability and, therefore, could not contribute to a finding a probable cause.   An informant's reliability and basis of knowledge are two key factors in determining whether, under the totality of the circumstances, probable cause exists.   Wilhelm, 80 F.3d at 119 (citing Gates, 462 U.S. at 233).   The Supreme Court has explained that "[u]nlike a tip

13

from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see Adams v. Williams, 407 U.S. 143, 146-147 (1972), 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' Alabama v. White, 496 U.S. 325, 329 (1990)." Florida v. J.L., 529 U.S. 266, 279 (2000) (internal citations truncated). "In evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration." Wilhelm, 80 F.3d at 119 (citing Lalor, 996 F.2d at 1581; see also Draper v. United States, 358 U.S. 307, 313 (1959) (anonymous tips corroborated by independent investigation helps establish tip's reliability).

Grave's affidavit first recites that, at an unspecified date, Graves received, from an unidentified source, unparticularized "information regarding possible illegal narcotics activity occurring at 601 Northside Avenue." Def.'s Exh. 9.  That information is vague and speculative as to what the alleged illegal activity may be, and is devoid of any temporal reference.

The affidavit continues to recite that "[i]nformation was also provided to your affiant that a suspect known as 'Melvin,' described as a short black male, approximately in his 30's, 5'9" approx. 180 lbs. was selling large amounts of heroin from 601 Northside Avenue." Id.  The "information" in that sentence is

14

specific as to the asserted illegal activity (selling heroin), but it is equally devoid of a temporal connection.

Moreover, apart from the yield of the trash can search, the Graves affidavit provides no information that would establish the anonymous informant's reliability or the basis of his or her knowledge.  <u>Gates</u>, 462 U.S. at 230 (adopting a totality of circumstances test for probable cause, but stating the reliability and veracity remain important factors in assessing probative value of a tip).  The affidavit does not even make clear whether there was more than one informant or only one.  And, if the evidence obtained from the trash behind the residence was stale, it supplied no corroboration for the anonymous tips.

However, assuming that the trash can search occurred on March 25, 2005, the yield of the trash can search corroborates the anonymous tips because the materials that Graves discovered in the trash from behind 601 Northside Avenue provided evidence that heroin trafficking (the activity reported in the tip) was indeed occurring at 601 Northside Avenue.[7]  Taken together, the results of the trash can search and the anonymous tips are sufficient to conclude that the magistrate had a substantial basis for finding

---

[7] <u>Colonna</u>, 360 F.3d at 1175(evidence obtained from defendant's trash cans supported probable cause to search the residence); <u>Woods</u>, 149 F.3d 1172, 1998 WL 276549 at **2 (same); <u>Payne</u>, 995 F.2d 1064, 1993 WL 218770 at **1 (same).

probable cause to issue a warrant for the search of 601 Northside Avenue for contraband and evidence of drug trafficking.

### B.   The Omitted Information

In a related argument, Gary contends that Graves knew, but did not include in the affidavit, other information pertinent to the determination of probable cause.  According to Gary, Graves omitted this information either deliberately or with reckless disregard for the truth.  If the omitted information had been included in the affidavit, says Gary, the magistrate would not have been able to find probable cause.

Where facts are omitted from a warrant application, a reviewing court will not overturn a magistrate's decision on probable cause unless the defendant establishes, by a preponderance of the evidence, that the omissions from an affidavit were either dishonest or made in reckless disregard of the truth and that the magistrate was misled by the omissions into believing that probable cause existed.  United States v. Photogrammetric Data Serv., Inc., 259 F.3d 229, 237-38 (4th Cir. 2001); see Franks, 438 U.S. at 156 (establishing standard for overturning magistrate's determination after a Franks hearing).  At the evidentiary hearing, the defendant established that Graves knew several facts which he did not include in the affidavit.  It is undisputed that none of the omitted information was communicated verbally to the magistrate.

First, it was shown that Graves searched two trash cans behind 601 Northside Avenue, not one as reported in the affidavit, and that only one of the trash cans was marked "601." Also, it was established that Graves retrieved trash bags from both trash cans. Second, the six plastic sandwich bags with corners torn off, the sandwich bag corners, and the seven pieces of foil were from the unmarked trash can.  Third, it was shown that Graves removed the trash bags from the trash cans, placed them in the trunk of the police car and departed to search them at another location. Depending upon which version of Graves' testimony is accepted, this occurred in two trips or in one.  In any event, it appears that no record was kept that would correlate the trash bags and their contents to a specific trash can.  Fourth, Graves knew that the document marked "601 Northside Avenue" bore the name "Tammy Sauls" not "Melvin Gary."  Fifth, the evidence showed that, in one of the trash cans, there was a bag which contained dog feces wrapped in newspaper and that, in the back yard of 601 Northside Avenue, there were three dogs in a pen.

Gary contends that, if all of the omitted information had been included in the affidavit, there was not a substantial basis for a finding of probable cause.  That argument misses the mark for several reasons.[8]

---

[8] There also was evidence that four trash cans bearing the number "601" were located behind other houses in the alley. However, there was no evidence that Graves was aware of that fact

There is no basis for finding that Graves deliberately omitted these points to affect the probable cause analysis.   Indeed, the fifth point would have augmented the probable cause predicate. Gary offers no explanation for why Graves deliberately would have omitted such a fact.

"To prove reckless disregard for the truth, the defendant must prove that the affiant 'in fact entertained serious doubts as to the truth' of the allegations.'" United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir.1984) (internal quotations omitted); see United States v. Davis, 617 F.2d 677, 694 (D.C. Cir. 1979) (holding that the First Amendment definition should be applied by analogy in the Franks setting); Beard v. City of Northglenn, 24 F.3d 110, 116 (10th Cir. 1994) (same)).[9]   Perhaps Graves was negligent in omitting the first, second, third and fourth points, but this record does not permit a finding of reckless disregard for the truth.

But, even if that finding could be made, Gary's contention would fail because those points, although clearly of some probative value in assessing probable cause, do not permit a finding that, if he had known these points, the magistrate would have been deprived

when he prepared the affidavit so it cannot be considered as omitted information.

[9] The Court could find no Fourth Circuit case that elucidated the meaning of the term "reckless disregard for the truth."

18

of information that materially and adversely affected a finding of probable cause.  Indeed, if all four points that Gary contends would undercut such a finding had been included, the fact would remain that evidence of drug dealing was found in the trash located behind 601 Northside Avenue and was connected to that address. That evidence provided corroboration to the anonymous tips. Accordingly, it cannot be said that the information not made known to the magistrate in those four points would have foreclosed a finding of probable cause.  Moreover, when the fifth point is added to the mix, there is further support for the nexus between the place to be searched and the evidence of drug trafficking found in the trash bag taken from the trash can behind the residence and clearly associated with it.

The unarticulated premise of this part of Gary's argument is that the evidence of drug trafficking found in the trash cans behind the residence could have been placed there by someone who did not live at 601 Northside Avenue.  That is a possibility. However, the probable cause analysis is based on "probability," and the evidence need not rule out all other possibilities.  Gates, 462 U.S. at 238 (probable cause to search exists if there is "a fair probability that contraband or evidence of a crime will be found in a particular place").

The record in this case shows that the evidence of drug trafficking was in secured trash bags in trash cans that were

situated behind the place sought to be searched, and that one of those cans bore the address of the residence.  Also, one of the secured trash bags contained an envelope addressed to 601 Northside Avenue, thereby further linking the contents of the trash with the residence.  Further, the evidence of drug trafficking found in the trash corroborated both the kind, and the location, of drug trafficking reported in the anonymous tips.  It is reasonable to infer that the evidence of drug trafficking came from the house, rather than from someone not associated with the residence, and the magistrate was entitled to draw that inference.

### III. Can The Actual Date Of The Trash Can Search Be Considered In Deciding Whether There Was A Substantial Basis For A Finding Of Probable Cause?

From the discussions in Parts I and II, it is apparent that the dispositive question in resolving this motion is whether the typographical error in the affidavit can be disregarded, and the actual date considered, in determining whether there existed a substantial basis for the magistrate's determination that there was probable cause.  Gary's position is that the affidavit presents stale information and thus, by implication, at least, he argues that the actual date cannot be considered in deciding the motion. The United States first argues that the typographical error in the affidavit can be overlooked by virtue of several decisions which address the effect of clerical mistakes in warrants and other

20

prosecutorial documents.[10]   The United States contends that the good-faith exception stated in <u>Leon</u> provides an alternative basis for excusing the typographical error.[11]

### A.   The So-Called "Clerical Error" Decisions On Which The United States Relies

The United States first argues that the date that makes the trash can search stale, and thus of no utility in supporting a probable cause finding, is simply a typographical or clerical error, which may be disregarded.   The typographical error in the affidavit is of no import, says the United States, unless the defendant shows that he was prejudiced thereby.[12]

In support of this theory, the United States cites three Supreme Court decisions: <u>Arizona v. Evans</u>, 514 U.S. 1 (1995); <u>Maryland v. Garrison</u>, 480 U.S. 79 (1986); and <u>Leon</u> and a number of Fourth Circuit decisions.   To be sure, some of the cited decisions are addressed to the effects of clerical errors in search warrants and other documents related to criminal cases, but none of them provide that <u>prejudice to the defendant</u> is the yardstick for assessing the effect of a clerical error in an affidavit for a

---

[10] Second Response Of The United States To Defendant's Motion To Suppress Evidence And Statement, pp. 5-7 (hereinafter "U.S. Second Resp. at __.").

[11] Third Response Of The United States To Defendant's Motion To Suppress Evidence And Statement, pp. 3-5 (hereinafter "U.S. Third Resp. at ___.").

[12] U.S. Second Resp. at pp. 5-6; U.S. Third Resp. at pp. 3-5.

search warrant, and certainly not where, as here, the error would defeat a finding of probable cause.

However, in addition to Leon, some of those decisions warrant discussion because they do involve typographical errors or other honest mistakes made by police in obtaining or executing search warrants. Nonetheless, for the reasons set forth below, those decisions are not controlling here.

The United States places principal reliance on Maryland v. Garrison, 480 U.S. 79 (1987), wherein the Supreme Court was confronted with a warrant that described the place to be searched more broadly than was appropriate because police, relying on their investigation and on utility company records, mistakenly thought that the third floor of the building had two apartments, rather than one. The affidavit in Garrison recited that the third floor was occupied by McWebb when, in fact, it was occupied by both McWebb and Garrison, who lived in two separate apartments. During the execution of the warrant, the officers discovered that there were, in fact, two apartments on the third floor; and, when the officers realized that they were in Garrison's apartment, they stopped the search. But, by then, the police had discovered contraband in Garrison's apartment.

To determine "whether the seizure of that contraband was prohibited by the Fourth Amendment," id. at 80, the Supreme Court analyzed two questions. The Court first assessed whether the

Warrant Clause of the Fourth Amendment had been violated and then examined whether the execution of the warrant satisfied the amendment's reasonableness requirement.  Id. at 83.

In Garrison, it was undisputed that the warrant was supported by probable cause.  Id. at 85.  The issue on which the validity of the warrant turned was the misidentification of the place to be searched.  The misidentification did not affect the validity of the warrant because no one knew of the misidentification until after the magistrate had issued the warrant.  The Court held that "[t]hose items of evidence that emerge after the warrant is issued have no bearing on whether or not the warrant was validly issued." Id.

That legal principle is inapplicable here because the mistake about the date in Graves' affidavit was obvious before the warrant was issued.  The correct date, therefore, is not an "item of evidence that emerged" after the warrant was issued.  Hence, that part of Garrison does not help the United States in this case.

Whether the execution of the warrant violated the respondent's right to be secure in his home from an unreasonable search presented a somewhat more difficult question for the Court in Garrison.  In resolving that issue, the Court made the comment that previously it had "recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants."

Id. at 87.  Finding that the mistake was reasonable based on all the facts, the Court held that the execution of the warrant did not violate the reasonableness requirement of the Fourth Amendment.

That aspect of Garrison related to the reasonableness of the execution of a warrant, not to whether there was probable cause for its issuance.  Hence, the "latitude for honest mistakes" language, on which the United States relies, has no applicability where, as here, the issue is whether there is support for the probable cause determination.

Based on the rationale of Garrison, the Fourth Circuit decided United States v. Owens, 848 F.2d 462 (4th Cir. 1988).  In Owens, the affiant officer, relying on utility department records, listed an erroneous apartment number as the location at which illegal activity was occurring and thus, the wrong apartment was designated in the warrant as the place to be searched.  However, as in Garrison, the affidavit clearly supplied probable cause for a search of the apartment in which Owens lived.[13]  In any event, the officers actually searched the apartment which they had intended to search.[14]  Relying on the reasoning of Garrison, the Fourth Circuit upheld the decision of the trial court denying the motion to suppress, citing Garrison's instruction that it was necessary to

---

[13] Owens, 848 F.2d at 463 and n.2.

[14] Neither of the two apartments bore the number that was in the affidavit and hence the warrant.

allow "some latitude for honest mistakes that are made by officers in the dangerous and difficult process" of executing search warrants. <u>Owens</u>, 848 F.2d at 463-64 (quoting <u>Garrison</u>, 480 U.S. at 87.[15]

As the United States argues, the Supreme Court, in <u>Garrison</u>, and the Fourth Circuit, in <u>Owens</u>, showed considerable tolerance for the making of honest mistakes so long as they were based on objectively reasonable grounds. However, in both cases, the affidavit firmly established probable cause and, because the error related only to the place to be searched, the error did not diminish the probable cause showing. More importantly, in both <u>Garrison</u> and <u>Owens</u>, the mistake could not be discerned by examining the face of the warrant or its supporting affidavit. The decisions in <u>Garrison</u> and <u>Owens</u> do not supply the controlling principles for resolving Gary's motion because, in this case, the typographical error is centrally related to the showing of probable cause, and the error was discernable on the face of the affidavit.[16]

---

[15] The Fourth Circuit also commented that the rationale of <u>Leon</u> and its companion case, <u>Massachusetts v. Sheppard</u>, 468 U.S. 981 (1984), supported the admissibility of the evidence. <u>Owens</u>, 848 F.2d at 465. However, the decision in <u>Owens</u> did not explain how those decisions factored into the result reached in <u>Owens</u>.

[16] The United States also cites <u>United States v. Morrow</u>, 925 F.2d 779, 781-82 (4th Cir. 1991) which is inapposite because it involved an error in an Indictment and the issue was whether the error in the serial number of a firearm constituted the constructed amendment of an Indictment. In <u>Btosabuy v. Welch</u>, 852 F.2d 220, 222 n.4 (4th Cir. 1988) the Fourth Circuit noted the existence of a typographical error but, it was not an issue in the case. The

The United States also relies heavily on <u>United States v.</u> <u>Souffrount</u>, 338 F.3d 809, 821-22 (7th Cir. 2003), a decision which the United States describes as "remarkably similar to the one at hand." (U.S. Second Resp. at p. 7). In fact, <u>Souffrount</u> is quite different from this case because the affidavit there contained several dates, all of which indicated a strong temporal connection to the events on which probable cause was founded. However, the affidavit also contained one erroneous date which, by reading the rest of the affidavit, clearly was a typographical error. On that ground, the Seventh Circuit declined to exclude the evidence. In this case, the only date on the affidavit, if given credence, would defeat a finding of probable cause. Thus, <u>Souffront</u> does not control here.[17]

---

decision in <u>United States v. Wyder</u>, 674 F.2d 224, 226 (4th Cir. 1982), involved a ministerial error in a warrant return (under Fed. R. Crim. P. 41) and thus it has no applicability here. Those decisions cited in the United States Second Response, pages 5 and 6, thus supply no support for its position. In its third response, the United States relies on pure dicta from <u>United States v. Plunk</u>, 456 F.2d 1027 (6th Cir. 1972) and other decisions which are equally inapposite.

[17] Some state courts, based on testimony showing that date errors in warrants and supporting affidavits were typographical or clerical, have sustained a magistrate's probable cause determination by excusing the error as merely clerical. For example, in <u>Sykes v. State</u>, 128 So. 753 (Miss. 1930), which presented almost identical timing issues as the case at bar, the warrant was dated August 1, 1929 and the supporting affidavit was dated July 1, 1929. The appellant argued the warrant was void because the evidence described in the affidavit was stale. The Supreme Court of Mississippi held that the evidence showed the affidavit was erroneously dated, and was in fact written on August 1, 1929. However, this "amendable defect in the affidavit. . . did

The United States cites <u>United States v. Williams</u>, 85 Fed. Appx. 341 (4th Cir. 2004) (unpublished case), a case in which the affiant in a warrant application entered three correct dates in a criminal Complaint and then failed to delete a dateline ("___ day of April 2000") that appeared in another part of the affidavit. The Court of Appeals was satisfied that the presence of the unexecuted dateline was a completely innocent mistake and excused it as a clerical error that was simply overlooked by the magistrate judge. <u>Id.</u> at 349.

<u>Williams</u> provides no support to the United States here because it involved whether a typographical error in a criminal Complaint rendered a subsequent indictment invalid. It did not address the sufficiency of an affidavit for a search warrant.

For the foregoing reasons, neither <u>Garrison</u> nor <u>Owens</u> nor any other decision cited by the United States in support of its clerical error argument is sufficiently like this case to warrant reliance on them to resolve this motion.

---

not affect the legality of the warrant." <u>Id</u>. at 754. <u>See also</u> <u>Williams v. State</u>, 535 So.2d 193, 195 (Ala. Crim. App. 1986) (search warrant was not defective merely because supporting affidavit was incorrectly dated for day after issuance of warrant because testimony showed the date on the affidavit was a typographical error); <u>Hendricks v. State</u>, 109 So. 263, 264 (Miss. 1926) (although affidavit was dated July 4, 1925 and warrant was dated July 3, 1925; warrant was valid because evidence showed that affidavit was actually completed July 3, 1925 and the warrant was completed on July 4, 1925). These courts' admission of evidence not presented to the magistrate would seem to violate the principle later articulated in <u>Whitley</u>.

27

**B.   The Good-Faith Exception Of <u>Leon</u>**

The United States argues alternatively that, because the error in the affidavit that would defeat a finding of probable cause is a clerical one, the yield of the search is saved from the reach of the exclusionary rule by the good-faith exception to that rule created by <u>Leon</u>.[18]   That argument has merit.

In <u>Leon</u>, the Supreme Court set about to dispel the related notions that "the exclusionary rule is a necessary corollary of the Fourth Amendment . . . or that the rule is required by the conjunction of the Fourth and Fifth Amendments." <u>Leon</u>, 468 U.S. at 906 (citations omitted).   To that end, the Court underscored its earlier decisions that:

> [w]hether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is an 'issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'

<u>Leon</u>, 468 U.S. at 906 (quoting <u>Gates</u>, 426 U.S. at 223).

The Court also explained that whether to invoke the exclusionary sanction is an issue that is to be "resolved by weighing the costs and benefits of preventing the use in the prosecution's case-in-chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a

---

[18] U.S. First Resp. at pp. 10-11; U.S. Second Resp. at pp. 7-8; U.S. Third Resp. at pp. 5-8.

detached and neutral magistrate that ultimately is found to be defective." Id. at 907. Moreover, in deciding whether there was to be a good-faith exception to the exclusionary rule, the Court emphasized that the rule "is designed to deter police misconduct rather than to punish the error of judges and magistrates." Id. at 916. With that purpose in mind, the Court concluded that the exclusionary rule has no deterrent effect when the offending officers act in an objectively reasonable manner and in good faith. Id. at 919-20.

The standard of reasonableness adopted by the Supreme Court is an objective one, and thus the subjective beliefs of the law enforcement officer may not be considered in applying the good-faith exception. Id. at 922, n.23. The standard of objective reasonableness also requires law enforcement officers to have a reasonable knowledge of the requirements of the law. Id. at 920, n.20.

It was against that background that, in Leon, the Supreme Court announced the good-faith exception to the exclusionary rule. In so doing, the Court explained that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial cost of exclusion." Id. at 922. However, at the same time, the Court also stated that "[w]e do not suggest . . . that exclusion is always inappropriate in cases where

29

an officer has obtained a warrant and abided by its terms."  Id.
In particular, the Court held that "[s]uppression therefore remains
an appropriate remedy" in four circumstances.  Id. at 923.  They
are:

> (1)  . . . if the magistrate or judge in
> issuing a warrant was misled by
> information in an affidavit that the
> affiant knew was false or would have
> known was false except for his reckless
> disregard of the truth [citation
> omitted];
>
> (2)  . . . where the issuing magistrate wholly
> abandoned his judicial role in the manner
> condemned in Lo-Ji Sales, Inc. v. New
> York . . . in such circumstances, no
> reasonably well-trained officer should
> rely on the warrant (citation omitted);
>
> (3)  If . . . the warrant is based on an
> affidavit "so lacking in indicia of
> probable cause as to render official
> belief in its existence entirely
> unreasonably" [citations omitted]; and
>
> (4)  . . . if "a warrant [is] so facially
> deficient--i.e., in failing to parti-
> cularize the place to be searched or the
> things to be seized--that the executing
> officers cannot reasonably presume it to
> be valid" [citation omitted].

Id. at 923 (emphasis added).  In summarizing its holding, the
Supreme Court explained that:

> [i]n the absence of an allegation that the
> magistrate abandoned his detached and neutral
> role, suppression is appropriate only if the
> officers were dishonest or reckless in
> preparing the affidavit or could not have
> harbored an objectively reasonable belief in
> the existence of probable cause.

Id. at 926.  Gary contends that Leon's good-faith exception cannot be applied here because all four of the circumstances which foreclose its application are present.  Each will be examined in turn.

### (1) Knowingly False Or In Reckless Disregard Of The Truth

Gary contends, almost in passing, that Graves misled the magistrate by deliberately leaving out of the affidavit facts that Graves thought cut against a finding of probable cause. Alternatively, and, in fact, principally, Gary contends that Graves omitted that information with reckless disregard for the truth. Gary made these contentions in arguing that there was no probable cause even if the yield of the trash can search is considered in assessing the magistrate's probable cause determination.  As explained in Part II above, the record does not support a finding that Graves deliberately omitted from the affidavit information that militated against a finding of probable cause, or that he did so with reckless disregard for the truth.  Hence, the first exemption from the good-faith exception to the exclusionary rule does not preclude application of the good-faith exception.

### (2) Abandonment Of Judicial Role

To fit within the second carve out from Leon's good-faith exception, the defendant must show that the affiant officer could not have reasonably relied on the magistrate's determination of probable cause because the officer knew that the magistrate "wholly

abandoned his detached and neutral judicial role," Id. at 923, or acted and as "an adjunct law enforcement officer." Id. at 914 (citing Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-27 (1979). This second factor applies in situations where the magistrate "overstep[s] his judicial responsibilities and compromise[s] his judicial neutrality" by, for example, "serv[ing] as the leader of a search party" or functioning as a "rubber stamp for the police." United States v. Severance, 394 F.3d 222, 231 (4th Cir. 2005) (citing Lo-Ji Sales, 442 U.S. at 326-27 and Leon, 468 U.S. at 914).

Although the Fourth Circuit has only rarely addressed this exemption from the good-faith exception,[19] it is generally true that a so-called "rubber stamp" showing requires more than merely demonstrating that the affidavit failed to establish probable cause. E.g. Wilhelm, 80 F.3d at 121 (magistrate who approved a bare bones affidavit acted as a rubber stamp); United States v. Martin, 297 F.3d 1308, 1318 (11th Cir. 2002) ("Just because the affidavit is later found to be lacking in probable cause does not mean the magistrate served as a mere rubber stamp."). Where the magistrate takes time to read the affidavit or requires additional details in the affidavit before signing it, the second exemption

---

[19] The Court has found only two decisions by the Fourth Circuit that address the second exemption in any detail. Those decisions are United States v. Severance, 394 F.3d 222 (4th Cir. 2005); and United States v. Dorman, 846 F.2d 74 (4th Cir. 1988) (unpublished case). The parties have cited none.

from the good-faith exception does not apply.  <u>Severance</u>, 394 F.3d at 232.

Other courts have held similarly.  For example, notwithstanding evidence that a judge based his probable cause determination on his relationship with the affiant officer rather than facts stated in the affidavit, the Eleventh Circuit applied the good-faith exception because nothing proved that the judge had not read the affidavit at all.  <u>Martin</u>, 297 F.3d at 1317-18; <u>accord</u> <u>United States v. Tagbering</u>, 985 F.2d 946, 951 (8th Cir. 1992) (despite judge's five minute review of affidavit, good-faith exception still applied); <u>United States v. Decker</u>, 956 F.2d 773, 777 (8th Cir. 1992) ("warrant's glaring omission of the items to be seized supports the district court's finding that the issuing judge never read it."); <u>United States v. Breckenridge</u>, 782 F.2d 1317, 1321 (5th Cir. 1986) (even assuming judge did not fully read the affidavit, "purposes of the exclusionary rule, as enunciated in <u>Leon</u>, would not be served by suppression of the fruits of the search").[20]

---

[20] <u>Cf</u>. <u>McCommon v. Mississippi</u>, 467 So.2d 940, <u>cert. denied</u>, 474 U.S. 984 (1985) (Brennan, J., dissenting) (arguing that the Court should have granted certiorari where judge who signed warrant testified that "he had relied principally on the fact the <u>police officers</u> had asked for the warrant, rather than on the underlying facts and circumstances set forth in the affidavit[,]" <u>id.</u> at 985, (emphasis in original) and stating "[t]hat the Court's failure to grant certiorari in this case suggests that our admonitions that probable cause must be determined by a neutral and detached magistrate are hollow pronouncements." <u>Id.</u> at 987).

Gary produced no evidence to show that the magistrate did not read the affidavit or that he read it so cursorily as to have wholly abandoned his neutral and detached role.  In fact, the magistrate testified that he read the affidavit.  There is nothing in the record to suggest that the magistrate acted in a partisan manner or aligned himself with the police.  Consequently, even though it is obvious that the magistrate missed the clerical error in the date of the trash can search, the second exemption does not bar application of the good-faith exception.

### (3)  Affidavit So Lacking In Indicia Of Probable Cause

The third circumstance that can foreclose reliance on the good-faith exception exists when "'the warrant was based on an affidavit so facially lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (emphasis added).[21]  This is a less demanding standard than that applied in reviewing the magistrate's decision that probable cause exists.  Bynum, 293 F.3d at 195 ("substantial basis" is the measure for determination of probable cause and is a stronger standard than Leon's "so lacking in indicia" standard).  In Bynum, the Fourth Circuit did not articulate the contours of the lesser standard.  However, in subsequent cases the Fourth Circuit has fleshed out the standard.  For example, "[w]arrants based on

---

[21] Quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part) and citing Gates, 462 U.S. at 263-64 (White, J., concurring in the judgment).

uncorroborated tips from unknown, unavailable informants," or "bare bones" affidavits, fall within this exemption from the good-faith exception. United States v. Cisneros-Mayoral, 129 Fed. Appx. 37, 40 (4th Cir. 2005) (unpublished case). Affidavits that do "not completely lack an indication of an informant's truthfulness and reliability," Dequasie, 373 F.3d at 522, or that have not "utterly fail[] to establish probable cause" do not require suppression of evidence discovered during the subsequent warranted search, United States v. Mannion, 54 Fed. Appx. 372, 375 (4th Cir. 2002) (unpublished case); accord United States v. Carpenter, 360 U.S. 591, 595-96 (6th Cir. 2004) (applying Bynum and characterizing "so lacking in indicia" as "not totally lacking in" or containing some information about.)[22]

Notwithstanding these unpublished decisions, it remains true that "[e]xactly what it takes to bring a case within this . . . category is a most difficult issue, one which continues to be frequently litigated." Wayne R. LaFave, 1 Search and Seizure §

---

[22] A number of decisions tend to conflate the third exemption from the good-faith exception with the fourth exemption which focuses not on the affidavit, but on the search warrant itself ("a warrant may be so facially defective--i.e., in failing to particularize the place to be searched or the things to be seized-- that the executing officers cannot reasonably presume it to be valid."). Leon, 468 U.S. at 923. In this case, there is no facial defect in the warrant, and thus the fourth exemption to the good-faith exception is not at issue here. Hence, it is necessary to ascertain whether the affidavit is so lacking in indicia of probable cause that an officer could not reasonably believe that probable cause existed.

1.3(f) (4th ed. 2004).[23]   That is especially true in this case because the Graves affidavit clearly is lacking any indicia of probable cause unless the clerical error is disregarded and because there is no controlling decisional authority to guide the inquiry where, as here, the clerical error is dispositive of the probable cause determination.

That, however, does not mean that there is no instructional authority to aid the analysis that must be made here.  For example, on the same day that it decided Leon, the Supreme Court applied the good-faith exception in Massachusetts v. Sheppard, 468 U.S. 981 (1984).   In Sheppard, an officer prepared an affidavit and presented it to a judge who concluded that the affidavit established probable cause.   The officer also had prepared a warrant form, but told the judge that the form might need to be changed.   The judge agreed and advised the officer that he would make the necessary changes.   Indeed, the officer actually observed the judge make some changes.   As it turned out, the judge did not make all the necessary changes and the warrant was later held to be defective.

Applying the good-faith exception established in Leon, the Court concluded that the police officer's conduct was objectively reasonable and declined to suppress the evidence because the

---

[23] LaFave refers to this as the "fourth" Leon category because that is his order of discussion.   In reality, it is the third category discussed by the Supreme Court in Leon.

deterrent function that the exclusionary rule was designed to achieve would not have been served because the error had been made by a judge, not a police officer. _Sheppard_, 468 U.S. at 991. Because the clerical error was made by a judge, not by a police officer, and because the error was in a warrant, not in an affidavit offered to show the existence of probable cause, _Sheppard_ is instructive but not controlling here.

In _Arizona v. Evans_, 514 U.S. 15 (1995), the Supreme Court applied the "reasoning of _Leon_" to allow introduction of evidence seized incident to an arrest which had resulted from an inaccurate computer record created by clerical personnel in a state court. Once again, the Court focused on the purpose of the exclusionary rule, explaining that:

> The exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect. As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served. Where 'the exclusionary rule does not result in appreciable deterrence, then clearly its use . . . is unwarranted.

_Evans_, 514 U.S. at 10-11 (internal citations omitted; ellipses in original).

The decisions in _Leon_, _Sheppard_, _Evans_, and their progeny teach generally that evidence obtained pursuant to a warrant that lacks probable cause merely because the warrant or the supporting

37

affidavit contained a dispositive clerical error should not be suppressed if the clerical error was not the fault of the affiant officer or the officer's police department. See also United States v. Williams, 149 F.3d 1172 (4th Cir. 1998) (unpublished case) (suppression not required where error caused not by affiant's police department but by a different law enforcement office); Illinois v. Krull, 480 U.S. 338 (1987) (exclusionary rule does not apply where probable cause was found based on a state statute later declared unconstitutional because the officer can not foresee that such a judicial determination would occur).

The Fourth Circuit has applied the reasoning of Leon in deciding whether to disregard a clerical error in a search warrant affidavit. However, the error related to the identity of the place to be searched, not to the predicate for probable cause. United States v. Angle, 230 F.3d 113 (4th Cir. 2000).

In Angle, an error in the affidavit was discovered during the trial. During the ensuing suppression hearing, it was shown that the affidavit contained a clerical error in the identity of the place to be searched. The trailer identified in the affidavit as the place to be searched was not the actual trailer intended to be searched. However, the intended trailer, in fact, was searched even though it was not named in the warrant (because the error in the affidavit was perpetuated in the warrant). The district court held that the clerical error in identifying the place to be

38

searched was an honest and innocent mistake, excused it, and denied the motion to suppress the evidence.  _Angle_, 230 F.3d at 118.

The Court of Appeals applied _Leon_'s good-faith exception and affirmed on the reasoning that "[n]one of the four situations outlined in _Leon_ which would cause an officer's reliance on the validity of a search warrant to be unreasonable is applicable under the facts of this case."  _Angle_, 230 F.3d at 120.  However, there is, in _Angle_, no other discussion about any of the four exemptions from the good-faith exception of _Leon_.

Instead, the opinion recites that "[u]nder _Leon_, the proper test of an officer's good-faith is 'whether a reasonably well trained officer would have known that the search was illegal despite the requisite authorization.'"  _Id._  Noting that the test for good faith is an objective one requiring "a determination of the knowledge of a reasonable officer, not an examination of an officer's subjective motives," the Fourth Circuit held that "[h]ere, the officer's actions in applying for and executing the challenged search warrant fall under _Leon_'s good-faith exception to the exclusionary rule."  _Id._

Although the Court of Appeals, in _Angle_, did not explain why _Leon_'s four exemptions did not apply, the first and second exemptions were not at issue because no facts related to those exemptions.  Because the clerical error was made in the affidavit and then repeated in the warrant, it appears that the third and

39

fourth exemptions were the focus of the decision.  That conclusion is supported by the court's finding that the "officer's actions in applying for and executing" the warrant fell under the good-faith rule.  Id.  It is further confirmed by the holding that "[a]s the district court found, it was objectively reasonable under the circumstances for the officer to have believed he had described the correct mobile house to search. . . ."  Id.[24]

Taken together, Sheppard, Evans and Angle teach that the reasoning of Leon is appropriately used to assess whether the remedy of the exclusionary rule is to be applied to suppress evidence from a search when the search warrant is invalid because of a clerical error in the supporting affidavit.  Angle provides the most pertinent instruction because it involves an error made by the officer who prepared the affidavit.

Several significant observations emerge when the method of Angle is applied to this record.  First, a reasonably well-trained police officer would know that an affidavit must establish probable

---

[24] This, of course, is somewhat problematic because the cited text, as well as that which follows it, is a comment on the officer's subjective knowledge.  Nonetheless, it is also true that the reasonable officer referred to in the objective standard would be aware of what the affiant knew to the extent that the affiant had put that knowledge in the affidavit or given it verbally to the issuing magistrate.  Of course, the affiant's knowledge that was not given to the magistrate cannot be considered.  Whitley v. Warden, 401 U.S. 560, 565 n.8 (1971); see United States v. Perez, 393 F.3d 457, 462 (4th Cir. 2004) (court should consider all information given to magistrate, including oral statements made during the warrant application hearing).

cause and that, if it does not, a warrant should not be issued. Also, such an officer would know, in this case, that the results of the trash can search were necessary to a showing of probable cause, given the other skimpy information in the affidavit. And, a reasonably well-trained officer would appreciate that the results of that search would not establish a nexus between the house and drug trafficking if the search results were a year old. Finally, a reasonably well-trained officer would not conclude that the yield of the trash can search would corroborate the anonymous tips he had received, if the search of the trash cans had occurred a year before he applied for a warrant.

Moreover, the reasonably well-trained officer would be aware that the trash can search had occurred the evening before the application for the warrant was made. And, to borrow from Angle, it would be "objectively reasonable under the circumstances for the officer to have believed that he had" correctly set forth the date of the trash can search that was essential to a showing of probable cause. Angle, 230 F.3d at 120.

In other words, a reasonably well-trained officer would understand that a magistrate would not issue a warrant if the magistrate perceived from the affidavit that the predicate for probable cause was stale by a year. It thus was objectively reasonable for Graves, who was unaware of the clerical error, to conclude that the affidavit he had presented was imbued with the

necessary indicia of probable cause. Hence, under the rationale of Angle, the third Leon exemption does not bar application of the good-faith exception to the exclusionary rule.

## IV. The Purpose Of The Exclusionary Rule Is Not Served By Suppression In This Case

This case presents an even more fundamental question than whether a search permitted by a warrant whose affidavit contains a fatal clerical error can be saved from the reach of the exclusionary rule under Leon's good-faith exception. That issue is whether, wholly apart from the good-faith exception of Leon, the exclusionary rule should apply to this innocently made clerical error at all.[25]

Police officers, like magistrates, lawyers, and judges make honest proof-reading errors from time to time. Indeed, in this case, the officer, the magistrate, and both counsel simply missed the fact that the date of the trash can search, as recited in the

---

[25] It is preferable to articulate a single basis for a decision, and, conversely, to refrain from making alternative holdings. Karsten v. Kaiser Found. Health Plan of the Middle Atlantic States, Inc., 36 F.3d 8, 11 (4th Cir. 1994). However, considering the rather unique issues presented by this record and the paucity of controlling authority, it seems preferable in this case to address all reasonably available grounds of decision.

affidavit, contained a typographical error.[26]  And, that error was of significant dimension.

The exclusionary rule is a remedy the purpose of which is to deter police misconduct that violates the Fourth Amendment.  Its purpose is not served by suppressing evidence obtained pursuant to a search warrant the affidavit for which contains an innocent typographical error, even if that error is singularly dispositive of probable cause.

The exclusionary rule exacts substantial societal costs. Leon, 468 U.S. at 907.  Consequently, the Supreme Court has instructed that:

> [p]articularly when law enforcement officers have acted in objective good faith <u>or when their transgressions have been minor</u>, the magnitude of the benefit-conferred on . . . guilty defendants offends the basic concepts of the criminal justice system.

Id. at 907-08 (emphasis added).  The same theme is reflected in the Court's instruction that "an assessment of the flagrancy of the police misconduct is an important step in the calculus" of making suppression decisions.  Id. at 911.  Moreover, the Court made clear in Leon that evidence obtained pursuant to a warrant should be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  Id. at 918.  The

---

[26] The error was first noted by the Court in preparation for the hearing on the motion to suppress.  Ironically, in an Order requiring further briefing the Court failed to catch its own error describing the date of the trash can search (Docket No. 19).

same teaching can be derived from the holding in <u>Garrison</u> decided three years after <u>Leon</u>, but with no mention of it.

<u>Leon</u> and its progeny make quite clear that suppression decisions must be made on a case-by-case basis and always mindful of the purpose of the exclusionary rule and the societal costs that its application exacts.   At the same time, it cannot be overemphasized that the exclusionary rule protects constitutional rights and thus that courts should be ready to apply the remedy when its purpose will be served.   However, suppressing evidence because of a typographical error made under the circumstances of this case will not deter police misconduct.   Instead, application of the remedy here would foster disrespect for the criminal justice system by elevating form over substance.   For this additional and independent reason, suppression is not an appropriate remedy here.

## CONCLUSION

For the foregoing reasons, the Defendant's MOTION TO SUPPRESS (Docket No. 10) is denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

_____/s/_____
                        Robert E. Payne
                        United States District Judge

Richmond, Virginia
Date: March 15, 2006